IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:11-CR-110-FL-1
4:13-CV-130-FL

| | |
|---|---|
| MCCOY RICHARDSON, ) | |
| ) | |
| Petitioner, ) | **ORDER and** |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

This case comes before the court on the motion (D.E. 45) ("petition") of pro se petitioner McCoy Richardson ("petitioner") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("§ 2255"), the government's motion (D.E. 53) to dismiss the petition, and petitioner's motion (D.E. 59) for appointment of counsel. The petition and motion to dismiss were referred to the undersigned for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rules 8(b) and 10 of the Rules Governing Section 2255 Proceedings ("§ 2255 Rules"). (*See* 3d D.E. dated 6 Sept. 2013). The motion for appointment of counsel was referred for disposition pursuant to 28 U.S.C. § 636(b)(1)(A). (*See* 2d D.E. dated 22 Sept. 2014). These matters have been fully briefed.[1] For the reasons stated herein, petitioner's motion for appointment of counsel will be denied, and it will be recommended that the government's motion to dismiss be granted and that the petition be dismissed.

---

[1] Petitioner filed a memorandum (D.E. 45-1) in support of the petition and one exhibit (D.E. 45-2), and the government filed a memorandum (D.E. 54) in support of its motion to dismiss and three exhibits (D.E. 54-1 to 54-3). In response to the government's motion, petitioner filed an affidavit. (D.E. 58). The government has not filed a response to petitioner's motion for appointment of counsel, and the time within which to do so has expired.

## BACKGROUND

**I. Petitioner's Conviction**

On 25 October 2011, petitioner was charged in a four-count indictment (D.E. 1) with one count of conspiracy to distribute and possess with the intent to distribute more than 28 grams of cocaine base (*i.e.*, "crack") in violation of 21 U.S.C. § 841(a)(1) (ct. 1) and three counts of distribution and possession with the intent to distribute a quantity of crack in violation of 21 U.S.C. § 841(a)(1) (cts. 2-4). On 12 April 2012, petitioner pleaded guilty (D.E. 28) to count 1 pursuant to a plea agreement (D.E. 31). On 18 July 2012, he was sentenced to 150 months' imprisonment and 5 years' supervised release, and counts 2-4 were dismissed pursuant to the plea agreement. (J. (D.E. 42) 1-3). Petitioner did not appeal his conviction, and, on 20 May 2013, he filed the petition now before the court.

**II. Petitioner's Claims**

Petitioner asserts that his guilty plea was rendered fundamentally unfair because the prosecutor: (1) knowingly allowed and encouraged Greenville Police Department ("GPD") Detective Rose Edmonds ("Edmonds") to testify falsely before a grand jury regarding a certain amount of crack (Pet. 4[2]; Pet.'s Mem. 1, 3-5); and (2) failed to disclose to petitioner certain information regarding Edmonds' criminal background in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) (Pet. 4; Pet.'s Mem. 1, 3-5).[3] Each of these claims will be addressed in turn below.

---

[2] Page citations to all documents in the record are to page numbers assigned by the court's CM/ECF electronic filing system.

[3] Although petitioner has asserted two distinct claims, he listed each of them in Ground 1 of the petition. (Pet. 4).

2

# DISCUSSION

I. **Applicable Legal Principles**

   A. **Standard of Review for § 2255 Petitions**

Pursuant to 28 U.S.C. § 2255, a prisoner may seek correction or vacation of a sentence on the grounds that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). "In a § 2255 proceeding, the burden of proof is on petitioner to establish his claim by a preponderance of the evidence." *Toribio-Ascencio v. United States*, Nos. 7:05-CR-00097-FL, 7:08-CV-211-FL, 2010 WL 4484447, at *1 (E.D.N.C. 25 Oct. 2010) (citing *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958)). Generally, an evidentiary hearing is required under 28 U.S.C. § 2255 "[u]nless it is clear from the pleadings, files, and records that the prisoner is not entitled to relief." *United States v. Rashaad*, 249 Fed. Appx. 972, 973 (4th Cir. 2007) (citing *Raines v. United States*, 423 F.2d 526, 529 (4th Cir. 1970)).

   B. **Motions to Dismiss under Rule 12(b)(6) in § 2225 Proceedings**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of claims for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court may consider a motion to dismiss pursuant to Rule 12(b)(6) challenging the legal sufficiency of a § 2255 petition. *See United States v. Reckmeyer*, No. 89-7598, 1990 WL 41044, at *4 (4th Cir. 2 Apr. 1990); *see also Walker v. True*, 399 F.3d 315, 319 (4th Cir. 2005) (vacating district court's order allowing the government's motion to dismiss petitioner's § 2254[4] petition because the

---

[4] Title 28 U.S.C. § 2254 also incorporates the Federal Rules of Civil Procedure. *See* Rule 12 of the Federal Rules Governing § 2254 Proceedings; *see also* Fed. R. Civ. P. 81(a)(4).

3

district court did not properly apply the Rule 12(b)(6) standard when it failed to assume all facts pleaded by petitioner to be true and considered material not included in the petition); § 2255 Rule 12 (expressly allowing the application of the Federal Civil Rules where "they are not inconsistent with any statutory provisions or these [§ 2255] rules"); Fed. R. Civ. P. 81(a)(4) (providing that the Federal Rules of Civil Procedure may be applied in § 2255 proceedings where a particular practice has not been specified by § 2255 and where such practice has "previously conformed to the practice in civil actions").

A motion to dismiss should be granted only if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). In analyzing a Rule 12(b)(6) motion, a court must accept as true all well-pled allegations of the challenged pleading. *Nemet Chevrolet Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (court must accept as true all factual allegations of the complaint). All reasonable factual inferences from the allegations must be drawn in plaintiff's favor. *Kolon Indus., Inc.*, 637 F.3d at 440 (citing *Nemet Chevrolet Ltd.*, 591 F.3d at 253). However, case law requires that the factual allegations create more than a mere possibility of misconduct. *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *Iqbal*, 556 U.S. at 679). Likewise, a pleading purporting to assert a claim is insufficient if it offers merely "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted)).

## II. Absence of Need for an Evidentiary Hearing

The court has considered the record in this case and applicable authority to determine whether an evidentiary hearing is needed to resolve the matters before the court. The court finds that the existing record clearly shows that petitioner is not entitled to relief on his claims and that an evidentiary hearing is not needed. The court will therefore proceed without an evidentiary hearing.

## III. Petitioner's Motion for Appointment of Counsel

In his motion, petitioner seeks appointment of counsel on the grounds that it would serve judicial economy. (Mot. 1). There is no constitutional right to counsel in a § 2255 proceeding. *See Bell v. Outlaw*, No. 5:07-HC-2227-FL, 2008 WL 4510587, at *2 (E.D.N.C. 29 Sept. 2008) (*citing Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)). While Rule 8(c) of the § 2255 Rules does require the court to appoint counsel for qualified petitioners when it determines that an evidentiary hearing is warranted, as discussed above, the court has determined that an evidentiary hearing is not required in this case.

Nevertheless, the court does have discretion under Rule 8(c) to appoint counsel at other stages of a § 2255 proceeding in accordance with 18 U.S.C. § 3006A. Appointment under § 3006A is permitted when "the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(b). Courts have declined to appoint counsel where, as here, the presentation by the petitioner adequately communicates his position and the legal issues presented are not complex. *See Bell*, 2008 WL 4510587, at *2 (denying § 2255 petitioner request for counsel because "[t]he court [did] not perceive issues of great legal complexity in this case"); *see also U.S. v. Martin*, No. 3:07CR122, 2009 WL 2434598, at *2 (E.D. Va. 6 Aug. 2009) (denying § 2255 petitioner's request for counsel because petitioner's "filings demonstrate that he is able to adequately

5

communicate with the Court"). As demonstrated by the discussion of petitioner's claims below, the court does not perceive the issues he raises to be of significant legal complexity or require detailed inquiry and, therefore, concludes that the interests of justice do not mandate the appointment of counsel. Accordingly, petitioner's motion for appointment of counsel will be denied.

IV.     **Prosecutorial Misconduct Claim**

Petitioner first asserts that the prosecutor in this case, Special Assistant United States Attorney W. Glenn Perry ("SAUSA Perry"), knowingly allowed Edmonds to testify falsely before the grand jury "regarding 85 grams of cocaine base." (Pet.'s Mem. 1; Pet.'s Aff. 2). The court agrees with the government that this claim should be dismissed.

A claim of prosecutorial misconduct requires a showing that the prosecutor's "conduct so infected the [proceedings] with unfairness as to make the resulting conviction a denial of due process." *United States v. Scheetz*, 293 F.3d 175, 185 (4th Cir. 2002) (internal quotation marks and citation omitted). "The test for reversible prosecutorial misconduct has two components; first, the defendant must show that the prosecutor's . . . conduct [was] improper and, second, the defendant must show that such . . . conduct prejudicially affected his substantial rights . . . ." *Id.* (citing *United States v. Morsley*, 64 F.3d 907, 913 (4th Cir. 1995)).

Petitioner has failed to adequately allege, nor can the court glean from the petition, how the allegedly false testimony by Edmonds before the grand jury rendered his guilty plea "fundamentally unfair." (Pet.'s Mem. 6). He asserts only that this testimony "cause[d] [him] to plead-out to sentence when he otherwise would not have" (Pet.'s Mem. 6) and fails to elaborate on the extent to which he relied on such testimony in deciding to enter a plea of guilty. Petitioner does not explain even the specific nature of the testimony aside from a vague assertion

6

that Edmonds falsely testified "regarding" 85 grams of crack. (Pet.'s Mem. 1; Pet.'s Aff. 2). In his petition, he alleges only that Edmonds "testified falsely before a grand jury" (Pet. 4) and, in his supporting memorandum, only that "Edmonds was encouraged to testify falsely regarding the existence of such drugs" (Pet.'s Mem. 4). In the affidavit petitioner filed in response to the government's motion to dismiss, he again summarily alleges only that Edmonds was allowed "to testify falsely before the grand jury regarding 85 grams of cocaine base." (Pet.'s Aff. 2).

The court finds these allegations to be only "naked assertion[s]" devoid of "further factual enhancement," *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted)) that are inadequate to plead the prejudice prong of a prosecutorial misconduct claim. *See Scheetz*, 293 F.3d at 185. For this reason, petitioner's claim of prosecutorial misconduct should be dismissed for failure to state a claim pursuant to Rule 12(b)(6).

Notwithstanding his failure to adequately plead prejudice occasioned by Edmonds' allegedly false testimony, petitioner cannot demonstrate such prejudice as a matter of law. The United States Supreme Court has held that irregularities in a grand jury proceeding do not constitute prejudice where the defendant is ultimately convicted. *United States v. Mechanik*, 475 U.S. 66, 70-72 (1986) (citing Fed. R. Crim. P. 52(a), which provides that errors that "[do] not affect substantial rights must be disregarded"); *see also White v. United States*, No. CIV WDQ-06-2875, 2007 WL 2461051, at *5 (D. Md. 24 Aug. 2007) (holding that any error resulting from the government's alleged presentation of false testimony to the grand jury "was rendered harmless by the trial jury's determination of [defendant's] guilt"); *Chacko v. United States*, No. 04 CIV. 2258 (JGK), 2005 WL 1388723, at *6 (S.D.N.Y. 8 June 2005) ("*Mechanik*'s logic has been applied to bar claims based on allegedly false grand jury testimony that are raised after

conviction."). Courts have applied this rule not only where the defendant was convicted after a jury trial, but also where a defendant pleaded guilty. *See United States v. Hefner*, 842 F.2d 731, 733 (4th Cir. 1988) (holding that defendant's guilty plea precluded a showing of prejudice where the foreman of the grand jury that issued the indictment was not eligible to serve); *Franklin v. United States*, No. 1:07CR428-2, 2011 WL 1675035, at *5 (M.D.N.C. 3 May 2011) ("[T]he harmless error standard of *Mechanik* also applies after the entry of a guilty plea."). Accordingly, petitioner's guilty plea precludes a showing of prejudice from any alleged false grand jury testimony by Edmonds. *See Chacko*, 2005 WL 1388723, at *6 (holding that defendant's ultimate conviction "cured" any error caused by the alleged perjured grand jury testimony of government witnesses); *Spencer v. United States*, No. 97 CIV. 3256 (LMM), 2000 WL 172636, at *2 (S.D.N.Y. 14 Feb. 2000) (denying petitioner's § 2255 claim that the prosecutor and an FBI agent conspired to provide false testimony before the grand jury because his conviction precluded a showing of prejudice).

## V.     *Brady* Claim

Petitioner also asserts that the government failed to comply with its obligations under *Brady v. Maryland* when it did not disclose information it allegedly possessed regarding Edmonds' "criminal background." (Pet.'s Mem. 1, 5). As with his first claim, he contends that had the government done so, he would not have entered a guilty plea. (Pet.'s Mem. 6).

Though petitioner fails to further describe the allegedly undisclosed information in either his petition or supporting memorandum, he has attached to his memorandum a copy (D.E. 45-2) of a 15 February 2013 news story from the website of NewsChannel 12 in New Bern, North Carolina reporting that on 18 February 2013 Edmonds was dismissed from the GPD on the grounds of falsifying a departmental record, lying, and gross negligence. (15 Feb. 2013 News

Rept. 1). The news report further indicates that, at the time, Edmonds was the subject of a criminal investigation that began in December 2012, but that she had not yet been charged. (*Id.* at 2). According to the government, on 8 April 2013, a state grand jury indicted Edmonds for breaking or entering, felony larceny, and obtaining property by false pretense. (Gov.'s Mem., Ex. 2 (D.E. 54-2), Indict. in *State of North Carolina v. Edmonds*, Nos. 13CR001501 & 13CR001502). The date of each offense was 24 October 2012. (*Id.*). Thus, the initiation of the criminal investigation of Edmonds and her subsequent dismissal from the GPD and indictment by the grand jury all occurred after petitioner was sentenced on 18 July 2012. Petitioner states in his affidavit, without further elaboration, that SAUSA Perry "knew about Edmonds committing these same criminal acts back in 1998" (Pet.'s Aff. 2), but he does not elaborate. Petitioner has therefore failed to adequately allege a factual basis for his *Brady* claim.

Under *Brady*, the government must produce any evidence that is "favorable to an accused . . . [if] the evidence is material either to guilt or to punishment." *Brady*, 373 U.S. at 87. Such evidence includes impeachment evidence. *Giglio v. United States*, 405 U.S. 150 (1972). Courts have held that the *Brady* duty to disclose exculpatory information applies not only to the trial phase of a case, but also to sentencing. *See United States v. Patel*, No. 99 C 2155, 1999 WL 675293, at *3 (N.D. Ill. 23 Aug. 1999) ("[T]he government may not withhold evidence favorable to the accused at sentencing; due process requires that a defendant receive a fair sentencing hearing."); *United States v. Severson*, 3 F.3d 1005, 1012 (7th Cir. 1993) (holding that the *Brady* requirement applies to sentencing); *United States v. Weintraub*, 871 F.2d 1257, 1265 (5th Cir. 1989) (holding that a *Brady* violation occurred where the government withheld impeachment information that would have allowed defendant to challenge, at sentencing, the testimony of a witness regarding the amount of drugs defendant sold). However, the United States Supreme

9

Court has clarified that *Brady* does not require a prosecutor to disclose impeachment evidence prior to entering into a plea agreement. *United States v. Ruiz*, 536 U.S. 622, 625 (2002) ("[I]mpeachment information is special in relation to the *fairness of a trial*, not in respect to whether a plea is *voluntary* ('knowing,' 'intelligent,' and 'sufficient[ly] aware.')." (emphasis in original) (quoting *United States v. Brady*, 397 U.S. 742, 748 (1970))); *see also United States v. Moussaoui*, 591 F.3d 263, 286 (4th Cir. 2010) (noting the holding of *Ruiz* that "a guilty plea is [not] invalidated by a prosecutor's failure to provide exculpatory impeachment information to a defendant prior to the plea").

Here, of course, petitioner pleaded guilty. Therefore, under *Ruiz*, the government was under no obligation to disclose impeachment evidence prior to petitioner's guilty plea. *See Ruiz*, 536 U.S. 622. For this additional reason, petitioner's *Brady* claim should be dismissed.[5]

To demonstrate a *Brady* violation, a defendant must show:

> (1) that the "evidence at issue [is] favorable to the accused, either because it is exculpatory, or because it is impeaching"; (2) that the "evidence [was] suppressed by the [government], either willfully or inadvertently"; and (3) that the evidence was material to the defense, *i.e.*, "prejudice must have ensued."

---

[5] The court agrees with the government that the facts presented here are distinguishable from those in *United States v. Fisher*, 711 F.3d 460 (4th Cir. 2013), and, accordingly, *Fisher* does not dictate a different result. In *Fisher*, the Fourth Circuit ruled that a defendant was entitled to withdraw his guilty plea when both he and the government later discovered that a law enforcement officer had lied in the affidavit supporting the search of defendant's home, which resulted in the discovery of evidence that formed the basis of the charge to which defendant pleaded guilty. *Id.* at 469. Although the defendant had raised his claim, in part, under *Brady v. Maryland*, the court's ruling was based on the defendant's argument under *Brady v. United States*, 397 U.S. 742 (1970), which sets forth the standard for determining whether a guilty plea was involuntary on the grounds of government misconduct. *Id.* at 464. Describing the case before it as "extraordinary," *id.* at 462, the court explained that the "case present[ed] highly uncommon circumstances in which gross police misconduct goes to the heart of the prosecution's case." *Id.* at 466. The court distinguished the case from one where a "[d]efendant sought to withdraw his plea 'merely because he discover[ed] long after the plea ha[d] been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action.'" *Id.* (quoting *Brady v. United States*, 397 U.S. at 757) (alterations in original). "Rather, Defendant's misapprehension stems from an *affirmative government misrepresentation* that strikes at the integrity of the prosecution as a whole." *Id.* (internal quotations and citations omitted) (emphasis added). Unlike the defendant in *Fisher*, and as further discussed herein, petitioner has not alleged that Edmonds' misconduct or the criminal charges against her relate in any way to the evidence supporting the charges against him.

*Moussaoui*, 591 F.3d at 285 (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). "[E]vidence is material, and constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

But even if the government had been obligated to disclose the alleged impeachment information, petitioner has failed to allege what prejudice he suffered as a result of not having it. Petitioner has not asserted that Edmonds' misconduct or the criminal charges against her relate in any way to his offense conduct or the evidence supporting the charges against him. In fact, a review of petitioner's Presentence Investigation Report (D.E. 35) ("PSR") shows that the government had substantial evidence from independent sources that support the charge to which defendant pleaded guilty. Specifically, the PSR indicates that petitioner's offense conduct involved 522.85 grams of crack. (PSR 3-5 ¶¶ 9-10). Of that total, 517.45 grams were attributed to him based on interviews with five cooperating witnesses. Only 5.2 grams of crack were attributed to him based on two controlled buys in which Edmonds participated.[6] (PSR 4 ¶ 9; Gov.'s Mem. 2-3 (indicating that Edmonds was involved in the controlled buys referenced in the PSR)). Moreover, as shown in a 10 January 2012 letter from SAUSA Perry to petitioner's counsel enclosing certain pretrial discovery, the controlled buys were either videotaped or photographed in conjunction with audio-recording, thereby making Edmonds' credibility as to what occurred during those buys less critical. (Gov.'s Mem., Ex. 1 (D.E. 45-1), 10 Jan. 2012 Ltr. 1).

---

[6] Although the PSR referenced a third controlled buy of 7.1 grams of cocaine (PSR 5 ¶ 9), the United States Probation Officer preparing the PSR excluded this amount in determining the total drug quantity attributable to petitioner to avoid double counting (PSR 5 ¶ 9).

11

Although petitioner has made no assertions of prejudice regarding his sentence, the court further notes that the calculation of petitioner's sentence range under the United States Sentencing Guidelines (2011) ("USSG") would have been the same even had plaintiff successfully impeached the evidence of the controlled buys. The PSR indicates that, for the purpose of calculating petitioner's base offense level under the USSG, 522.85 grams of crack and 17 grams of cocaine are equivalent to 1,870.5 kilograms of marijuana. (PSR 12 ¶ 41 (citing USSG § 2D1.1(c)(4)); *see generally* USSG § 2D1.1, appl'n n. 10(B) (providing that marijuana equivalents set out in subpt. (D) can be used for combining different controlled substances to obtain a single offense level). Because the offense conduct involved "at least 1,000 kilograms but less than 3,000 kilograms of marijuana," petitioner's base offense level was determined to be 32. (*Id.*). The subtraction of the 5.2 grams of crack from the controlled buys in which Edmonds participated would not have changed the calculation of petitioner's base offense level.[7]

For the foregoing reasons, the court concludes that plaintiff has failed to state a claim under *Brady v. Maryland*, and this claim should be dismissed.

## CONCLUSION

For the foregoing reasons:

1.  IT IS ORDERED that petitioner's motion (D.E. 59) for appointment of counsel is DENIED.

2.  IT IS RECOMMENDED that the government's motion to dismiss (D.E. 53) be GRANTED and that the petition (D.E. 45) be DISMISSED.

---

[7] More specifically, under the USSG, 5.2 grams of crack is equivalent to approximately 18.6 kilograms of marijuana. *See* USSG § 2D1.1, appl'n n.10 (B), (D). Thus removal of the 5.2 grams of crack would reduce the total marijuana equivalency of 1,870.5 kilograms by approximately 18.6 kilograms to 1,851.9 kilograms, which still falls squarely between the 1,000 to 3,000 kilograms required for a base offense level of 32. USSG § 2D1.1(c)(4).

3. IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to the respective parties or, where applicable, their counsel, who shall have until 8 April 2015 in which to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Responses to any objections shall be filed within 14 days after service thereof, unless otherwise ordered by the court.

SO ORDERED, this the 25th day of March 2015.

James E. Gates
United States Magistrate Judge